

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HYUNDAI CAPITAL AMERICA,

                    Plaintiff,

     -against-

NEMET MOTORS, LLC, A NEW YORK LIMITED
LIABILITY COMPANY;
AND SCOTT A. PERLSTEIN, SR.,

                    Defendants.
-----------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
19-CV-05506 (CBA) (RER)

**AMON, United States District Judge:**

On October 10, 2019, Plaintiff Hyundai Capital America ("HCA") initiated this action against Defendants Nemet Motors, LLC ("Nemet") and Scott Perlstein, Sr. ("Perlstein") (collectively, "Defendants"). (D.E. # 1 ("Compl.").) HCA alleges that Nemet breached its contractual obligations under two agreements and that Perlstein, as the guarantor of Nemet's obligations, is liable for the amount due to HCA under these agreements. (Compl. at 9–15.)[1] HCA seeks an order of seizure[2] for certain inventory serving as collateral to the agreements. (Id. at 1–9; D.E. # 13 ("Pl. Mem.").)

On October 15, 2019, the Court referred HCA's motion to the Honorable Magistrate Judge Ramon E. Reyes for a report and recommendation. (D.E. dated October 15, 2019.) On October 29, 2019, Judge Reyes issued a thorough and well-reasoned report and recommendation recommending that the Court grant HCA's motion for an order of seizure. (D.E. # 14 (the

---

[1] References to the Complaint are based on page number rather than paragraph number, as the Complaint contains duplicate paragraph numbers.

[2] A "writ of replevin" is referred to under relevant New York law as an "order of seizure." These terms were used interchangeably by the parties, and are used interchangeably throughout this Memorandum and Order.

"R&R").) For the reasons set forth below, the Court adopts Judge Reyes's recommendation and grants HCA's motion for an order of seizure.

## BACKGROUND

### I. Factual Background

Defendant Nemet is a New York limited liability company engaged in the business of selling and leasing Kia and Hyundai vehicles to the general public. (Compl. at 1; D.E. # 12-1 ("Perlstein Decl.") ¶ 3.) Defendant Perlstein is the president of Nemet. (Perlstein Decl. ¶ 1.) Plaintiff HCA is a California corporation that provides financing to authorized Hyundai dealers, such as Nemet, to enable these dealers to acquire inventory. (Id., ¶ 3; Compl. at 1.)

#### A. The Inventory Loan and Security Agreement

In September 2014, HCA and Nemet entered into an Inventory Loan and Security Agreement (the "ILSA") pursuant to which HCA could make advances to Nemet. (Compl. at 2, Ex. A.) The terms of the ILSA state that if Nemet sells, leases, or trades a vehicle that was purchased using HCA's funds, Nemet has an obligation to immediately repay HCA the amount outstanding on its advance for that vehicle. (Id.) Nemet entered into a similar financing agreement with Nissan Motors Acceptance Corp. ("NMAC") to facilitate Nemet's acquisition of inventory for its franchise with Nissan North America, Inc. ("Nissan"). (Id. at 2.)

After learning of Nemet's agreement with NMAC, HCA entered into an inter-creditor agreement with NMAC, on September 5, 2014. (Id.) The ILSA provides that if Nemet breaches any obligation to any creditor with which HCA has an inter-creditor agreement, the breach constitutes an event of default under the ILSA. (Id. at Ex. A § 10(g).) The ILSA further provides that Nemet is required to maintain all of its franchises "necessary to carry on the business as

2

presently or proposed to be conducted." (Id. at Ex. A § 9(a)(i).) The termination of Nemet's franchise with Nissan would constitute an event of default under the ILSA. (Id. at Ex. A § 10(f).)

As collateral for Nemet's debts and obligations to HCA, Nemet granted HCA a security interest in all of Nemet's personal property and fixtures, including its "right, title, and interest in . . . all inventory, including new and used motor vehicles, parts, accessories, display or demonstration items, . . . and other personal property held for sale or lease . . . " (the "Collateral"). (Id. at Ex. A § 8.) Also included as part of the Collateral are "[a]ll accounts, accounts receivable and rights to payment of money of any kind, including all accounts, accounts receivable, general intangibles, contract rights, and right to payment of money due or to become due to [Nemet] from any manufacturer or distributor of motor vehicles and from any of their respective divisions, subsidiaries and affiliates . . . ." (Id.) The security interest was perfected by the filing of a UCC Financing Statement. (Id. at 4, Ex. B.)

The ILSA provides that upon a default, HCA is entitled to, inter alia, immediate repayment of all outstanding advances and interest, the right to take actual or constructive possession of the Collateral, the right to appoint a "keeper" to serve as HCA's representative on Nemet's premises, and the right to take possession of statements of origin and title of the vehicles serving as Collateral, as well as of other tangible or intangible property relating to or comprising part of the Collateral. (Id. at Ex. A § 11.)

B. The Business Loan Agreement

In August 2016, HCA and Nemet entered into a Business Loan Agreement ("BLA") pursuant to which HCA loaned Nemet $400,000 to be used as working capital. (Id. at 11, Ex. C.) Under the terms of the BLA, Nemet was required to pay sixty monthly installments, on the first day of each month, plus interest. (Id. at 12, Ex. C § 4.) The BLA also provided that if Nemet

3

did not make timely payments of the monthly installments, or if Nemet defaulted in any performance of the agreements contained in the ILSA, HCA could accelerate the unpaid principal and interest to become immediately due and payable. (Id. at 12, Ex. C §§ 10–11.)

C. Perlstein's Continuing Guaranty and Subordination Agreement

Perlstein entered into a Continuing Guaranty and Subordination Agreement under which Perlstein would be jointly and severally liable for any breach by Nemet under the ILSA or BLA. (Id. at 14–15, Ex. H.)

D. Default

On June 6, 2019, NMAC filed suit against Nemet, alleging that Nemet had breached their agreement, including by failing to repay NMAC for the sale of at least 192 vehicles financed by NMAC. See Nissan Motor Acceptance Corp. v. Nemet Motors, LLC, 19-cv-3284 (NGG) (CLP) (E.D.N.Y. 2019). Nemet thereafter sent Nissan a notice of termination of its Nissan franchise. (Compl. at 4.) By letter dated July 23, 2019, HCA gave Nemet notice of its default under the ILSA. (Id. at 6, Ex. E.)

Following the notice of default, Nemet consented to HCA's placing a keeper on its premises, which was one of HCA's rights under the ILSA. (Compl. at 6.) Nemet requested, however, that HCA waive certain other rights. (Id.) Most relevant for the present purposes, Nemet requested that HCA waive its right to seek monies owed to Nemet by certain manufacturers— namely, Hyundai Motors America ("HMA") and Kia Motors America ("KMA")—in the approximate sum of $350,000.[3] (Id.) Nemet also asked that HCA forbear from pursuing any other

---

[3] HCA uses the approximate figure of $350,000 in its Complaint. Defendants assert that this figure is actually in excess of $400,000. (See Perlstein Decl. ¶ 7; Hearing Tr. 10:2–3; Def. Obj. at 4.) The precise figure is not relevant for purposes of this Memorandum and Order.

4

rights it had under the ILSA, given that Nemet had obtained a potential purchaser for its Hyundai dealership. (Id.) On September 10, HCA declined Nemet's requests. (Id. at 6–7.)

Also on September 10, Nemet failed to pay HCA interest due under the ILSA, which prompted HCA to send a second notice of default, and pursuant to the terms of the ILSA and BLA, HCA demanded payment of the $5,286,528.25[4] then owed to be due and payable by September 11, 2019. (Id. at Ex. F.) Nemet did not comply. (Id. at 7.) Nemet also failed to make the interest payment due on October 10, 2019. (D.E. # 17 ("Hearing Tr.") 8:2–3.) Defendants do not dispute that Nemet defaulted under the terms of the ILSA. (Hearing Tr. 7:9–11, 8:9–11, 20:11–12.)

## II.    Procedural Background

HCA filed suit against Nemet on October 10, 2019, alleging Nemet's breach of the ILSA and BLA, and Perlstein's breach of the Guaranty Agreement, and requesting, inter alia, a preliminary injunction and an order of seizure. (See generally Compl.) HCA also submitted an application for entry of an order compelling the Defendants to show cause why the Court should not issue an order of seizure for the vehicles. (D.E. # 2.) HCA supported this application with a memorandum of law, a verified complaint, a list identifying the vehicles and the amount due on each vehicle, and copies of the parties' contracts. (See Compl.; Pl. Mem.)

That same day, counsel for HCA appeared before the Honorable Judge Kiyo A. Matsumoto, who was acting as the miscellaneous duty judge, to request a temporary restraining order ("TRO"). (D.E. dated October 11, 2019 and identified as "Minute Entry.") Defendants' counsel participated in the hearing via telephone. (Id.) At the hearing, Judge Matsumoto issued a TRO ordering Defendants to: (1) continue to permit a keeper to remain on Nemet's premises; (2) give the keeper possession of all statements of origin, titles, and keys for the vehicles serving as

---

[4] Page 8 of the Complaint incorrectly cites the figure demanded as $5,125,997.44.

the Collateral; and (3) refrain, "other than in the ordinary course," from "sell[ing], transfer[ring], mov[ing], hypothecat[ing] or assign[ing] any interest in the Collateral pending further Order of this Court." (TRO Hearing Tr. 10:4–12:10; see also D.E. # 9 at 2.) Judge Matsumoto also ordered the parties to appear for a hearing on October 23, 2019, as to HCA's request for a preliminary injunction and order of seizure. (D.E. # 9 at 2.)

The October 23, 2019 hearing was held before Magistrate Judge Reyes (the "Hearing"). (D.E. dated October 23, 2019.) At the Hearing, Judge Reyes asked counsel for HCA whether they were in fact requesting a preliminary injunction, or were instead seeking some other form of relief. (Hearing Tr. 2:24–3:11.) Counsel responded that "what [HCA is] seeking" from the Court is (1) the "continuation of the restraints [put in place by the TRO] until [HCA get[s] the cars back," and (2) "entry of order for issuance of a writ of replevin." (Hearing Tr. 3:12–20; see also, id., 5:20–6:2; Pl. Mem. at 4 ("HCA respectfully requests that an Order for issuance of a Writ of Replevin issue, and that the existing restraints remain in place until such time as the Writ of Replevin is executed and HCA obtains possession of its collateral.").) Judge Reyes construed HCA's position to be that it does not presently[5] seek a preliminary injunction, and rather seeks solely (1) an extension of the TRO within bounds authorized by federal law, and (2) an order of seizure. (R&R at 4.)

With respect to the first form of relief, the parties consented on the record to extend the TRO by 45 days, (Hearing Tr. 5:20–6:8), and Judge Reyes accordingly ordered the TRO to expire

---

[5] Judge Reyes noted that HCA indicated it "may seek a preliminary injunction in the future," should they discover further problems. (R&R at 4 n.4 (citing Hearing Tr. 15:1–9).) HCA did not object to Judge Reyes's characterization of its position in its reply brief, and stated that the R&R "is correct and should not be disturbed." (Pl. Reply at 1.) Defendants also crafted their objections to the R&R on the understanding that this is HCA's position. (See Def. Obj. at 1 n.1 ("As the [R&R] notes, the second branch of [Hyundai's] motion seeking preliminary injunctive relief was voluntarily withdrawn by HCA during the course of the evidentiary hearing before [Judge Reyes] on October 23, 2019.").)

on December 9, 2019, (D.E. dated October 23, 2019). Regarding the second form of relief, Judge Reyes issued an R&R on October 29, 2019 recommending that this Court grant HCA's motion for an order of seizure. On November 12, 2019, Defendants timely filed objections to the R&R. (D.E. # 15 ("Def. Obj.").) And on November 14, 2019, HCA filed a reply to Defendants' objections. (D.E. # 16 ("Pl. Reply").)

## STANDARDS OF REVIEW

### I.     Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. Id.; see also United States v. Romano, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. John Hancock Life Ins. Co. v. Neuman, No. 15-cv-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (internal quotation marks omitted)); see also DePrima v. N.Y.C. Dep't of Educ., No. 12-cv-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

## II.    Order of Seizure

Rule 64 of the Federal Rules of Civil Procedure provides that in a federal action "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This rule applies to actions or claims requesting relief in the form of replevin. Fed. R. Civ. P. 64(b). Relevant here, the New York Uniform Commercial Code provides that after a borrower defaults, a secured creditor "may take possession of the collateral . . . pursuant to judicial process." N.Y. U.C.C. § 9-609.

Article 71, section 7102 of the New York Consolidated Laws, Civil Practice Law and Rules ("N.Y. C.P.L.R.") provides the procedure for obtaining a judicial order of seizure under New York state law. Barlow Lane Holdings Ltd. v. Applied Carbon Tech. (Am.), Inc., No. 02-CV-928S(F), 2004 WL 1792456, at *3 (W.D.N.Y. Aug. 11, 2004), report and recommendation adopted, No. 02-CV-928S, 2004 WL 2110733 (W.D.N.Y. Sept. 22, 2004). To obtain an order of seizure, a plaintiff must, inter alia, submit an affidavit that "clearly identif[ies] the chattel to be seized" and states:

1. that the plaintiff is entitled to possession by virtue of facts set forth;
2. that the chattel is wrongfully held by the defendant named;
3. whether an action to recover the chattel has been commenced, the defendants served, whether they are in default, and, if they have appeared, where papers may be served upon them;
4. the value of each chattel or class of chattels claimed, or the aggregate value of all chattels claimed;
5. if the plaintiff seeks the inclusion in the order of seizure of a provision authorizing the sheriff to break open, enter and search for the chattel, the place where the chattel is located and facts sufficient to establish probable cause to believe that the chattel is located at that place; [and]
6. that no defense to the claim is known to the plaintiff[.]

N.Y. C.P.L.R. § 7102(c)(1)–(6).[6]   Section 7102(e) also requires a plaintiff to present an undertaking to the court.

"To establish a cause of action under Article 71, a plaintiff must show that it has an immediate and superior right to possession of the goods." Bank of Am., N.A. v. Won Sam Yi, 294 F. Supp. 3d 62, 71–72 (W.D.N.Y. 2018) (internal quotation marks omitted); see also Colonial Ford, Inc. v. Ford Motor Co., 90-cv-1157E, 1991 WL 5161, at *2 (W.D.N.Y. Jan. 8, 1991) (noting that the purpose of Article 71 "is to determine which of the parties before the Court has the superior possessory interest in the chattel"). A plaintiff must also establish a likelihood of success on the merits of its replevin action. Won Sam Yi, 294 F. Supp. 3d at 72 (noting that N.Y. C.P.L.R. § 7102(d) authorizes a court to issue an order of seizure "[u]pon presentation of the affidavit and undertaking and upon finding that it is probable the plaintiff will succeed on the merits and the facts are as stated in the affidavit" (alteration in original) (quoting N.Y. C.P.L.R. § 7102(d))).

Under New York law, "default under the note and the provision of the loan agreement for a security interest in their inventory and a right to possession upon default establish [a] plaintiff's prima facie entitlement to the provisional remedy of seizure." Id. (alteration in original) (internal quotation marks omitted). After the plaintiff establishes a prima facie case, the burden shifts to the defendant to come forward with evidentiary facts demonstrating "the existence of a material issue of fact with respect to a bona fide defense." Id. (internal quotation marks omitted).

---

[6] N.Y. C.P.L.R. 7102(c)(7), which applies when an order of seizure is requested without notice to the other party, is not applicable.

**DISCUSSION**

**I.    Unopposed Recommendations**

Defendants have not objected to the portion of the R&R in which Judge Reyes found that HCA has established the requirements of N.Y. C.P.L.R. § 7102(c)(1)–(6). (See R&R at 4–5.) Of particular relevance, Judge Reyes found that Exhibit G to HCA's Complaint clearly identifies the Hyundai and Kia vehicles it seeks to recover.[7] (See R&R at 5 & n.6.) Defendants also do not object to Judge Reyes's rejection of their defense that by failing to produce the inter-creditor agreement between HCA and NMAC, HCA had failed to demonstrate that its lien is superior to the rights of other creditors. (See R&R at 6.) The Court has reviewed these unopposed portions of the R&R and, finding no clear error, adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1).

**II.    Defendants' Objections**

Defendants do, however, make three objections to the R&R. Defendants' objections, and the portions of the R&R to which they relate, are reviewed below.

A. First Objection: The Impending Sale of Nemet's Dealerships' Assets and Real Estate Renders HCA's Request for an Order of Seizure Unnecessary

In their objections brief, Defendants argue that any need for an order of seizure is obviated by the fact that Nemet has executed an asset purchase agreement for its Hyundai and Kia dealerships' assets, and "anticipates executing a purchase agreement for the real estate on which the dealer operates, in short order." (Def. Obj. at 2.) The proceeds of these sales, they argue, would put Nemet in a position to "fully cure any alleged defaults" under its agreements with

_____

[7] As further noted in the R&R, HCA acknowledges that some vehicles have been sold since the filing of the Complaint, and HCA seeks solely to recover the remaining vehicles that Nemet has not yet sold. (R&R at 5 n.6.)

HCA. (Id.) As such, HCA will be "better off" if Nemet is able to proceed with these asset sales, rather than if the Court issues an order of seizure. (Id. at 2–3.)

Defendants concede that they raised this same defense in their written submission to Judge Reyes as well as at the Hearing, but they argue that Judge Reyes failed to make the recommendation that "should logically have followed" from their arguments—namely, denial of HCA's motion for seizure. (Id. at 2.) More specifically, they contend that in rejecting their arguments, Judge Reyes was "unduly swayed" by HCA's argument that HCA "will not be better off without an order of seizure." (Id. at 2–3.) They also dispute Judge Reyes's purported finding that HCA would in fact "be 'better off'" with an order of seizure. (Id. at 3.)

Defendants' arguments are without merit. First, contrary to Defendants' assertion, Judge Reyes never made a factual finding that HCA would be "better off" with an order of seizure. To the contrary, Judge Reyes acknowledged that Defendants presented "persuasive arguments as to why HCA would not be better off" with such an order. (R&R at 6.) Relatedly, Judge Reyes was not "unduly swayed" by HCA's argument that it would be in a more favorable position with an order of seizure. Rather, Judge Reyes rejected Defendants' purported defense to seizure because he correctly recognized it as "simply not a defense." (Id.) In particular, he noted that HCA's right to the Collateral does not depend on the financial impact that seizure would have on the parties, but rather on whether HCA has a superior right over Defendants to the Collateral. (Id.)

After HCA established a prima facie case for entitlement to an order of seizure, (see R&R at 4–5), the burden shifted to Defendants to come forward with facts demonstrating the existence of a material issue of fact with respect to a bona fide defense, Won Sam Yi, 294 F. Supp. 3d at 72. Defendants' arguments that HCA would be in a more favorable position if this Court denies them an order of seizure do not raise a material issue of fact with respect to a bona fide defense. The

11

Court thus agrees with Judge Reyes's recommendation and rejects Defendants' first purported defense to HCA's motion.

## B. Second Objection: HCA's Unclean Hands Preclude an Award of Replevin

Defendants argued to Judge Reyes that HCA cannot seek the equitable remedy of replevin because it has unclean hands. (Hearing Tr. 9:25–11:8.) HCA has unclean hands, they contend, because it reached out to manufacturers and directed them to withhold hundreds of thousands of dollars owed to Nemet. (Id.)

Judge Reyes considered Defendants' unclean hands defense and noted that, "[a]lthough the 'unclean hands' doctrine may be a defense in replevin actions, the doctrine is inapplicable here . . . ." (R&R at 6.) First, Judge Reyes points out that under the terms of the ILSA, HCA holds a valid security interest in the receivables it directed to be withheld, "which it can seek recourse against in the event of Defendants' default." (Id. (citing Compl. at Ex. A § 8, Ex. B.) Second, Defendants' argument fails because HCA's purported misdeed is insufficiently related to the equitable remedy it seeks. (Id. (internal quotation marks and citations omitted) ("If the right for which the plaintiff seeks protection . . . did not accrue to him because of the misdeed, the plaintiff's conduct is secondary and the doctrine of unclean hands does not apply. . . . Here, any malfeasance related to the receivables has no immediate and necessary relation to the cars HCA seeks to recover.").) Judge Reyes accordingly recommended that this Court reject Defendants' unclean hands defense.

Defendants argue in their objections brief that Judge Reyes "incorrectly applie[d] the 'unclean hands' doctrine." (Def. Obj. at 3.) Defendants then proceed to repeat many of the same facts and arguments they presented to Judge Reyes—broadly speaking, that HCA's direction to

12

manufacturers HMA and KMA[8] to withhold "in excess of $400,000 owed to Nemet" was "inequitable." (See id. at 3–5.) The only arguably additional points Defendants raise are further details regarding the relationship between HCA's actions and the equitable relief HCA seeks. (See id. at 4 (asserting that HCA directed HMA and KMA not to release the funds "unless and until [Nemet] turns the Vehicles over to HCA"); 3–5 (arguing that the withholding of these funds has prevented Nemet from being able to "consummate the sale of its dealership," which would purportedly result in millions of dollars that could be used to satisfy their debt to HCA).) They assert that these facts contradict Judge Reyes's finding that HCA's actions regarding the funds "ha[ve] no 'immediate and necessary relation' to the cars HCA seeks to recover."[9]

Defendants' further delineation of the connection between HCA's actions and the equitable relief sought is unavailing. Even if there is a relationship between the two, it is not of the kind required for successful invocation of the unclean hands defense. If the "right for which the plaintiff seeks protection . . . did not accrue to him because of the misdeed," the plaintiff's conduct is secondary and the doctrine of unclean hands does not apply. Puebla Paloma v. DeMaio, No. 5:15-cv-1536 (LEK) (TWD), 2019 WL 4195300, at *10 (N.D.N.Y. Sept. 4, 2019). Here, HCA's right to seek an order of seizure did not accrue to it because of any alleged misdeeds regarding withholding of these funds but instead existed prior to any alleged misdeeds. More specifically, HCA's right to seek an order of seizure accrued upon Nemet's default, and it was only after this default that HCA ordered the funds to be withheld. (Hearing Tr. 17:14–17.) In other words,

---

[8] At the Hearing, Defendants mentioned monies owed to Nemet by HMA. (Hearing Tr. 9:25–10:17.) In their objections brief, Defendants mention that the sum owed was owed by HMA and KMA, collectively. (Def. Obj. at 4–5.) This discrepancy is not relevant to analyzing their unclean hands defense.

[9] Defendants also argue that "HCA has not demonstrated that simply because it has a secured lien on the accounts receivable, it was within its rights to restrain its affiliated companies, HMA and KMA, from satisfying a legitimate debt owed to Nemet." (Def. Obj. at 5.) The Court need not address this argument. It is Defendants' burden to establish the affirmative defense of unclean hands, and for the reasons discussed infra, their attempt to do so fails on independent grounds.

Defendants do not (and cannot) successfully argue that HCA's right to an order of seizure accrued to it due to its misdeed. For the reasons stated above and in the R&R, Defendants' unclean hands defense fails.

C. Third Objection: HCA Should Be Required to Post an Undertaking in Order to Obtain an Order of Seizure

Defendants raise one final defense in their objections brief—namely, HCA's failure to post an undertaking—which the Court reviews de novo. 28 U.S.C. § 636(b)(1)(C); see also, Romano, 794 F.3d at 340. In order to obtain an order of seizure, N.Y. C.P.L.R. § 7102(e) requires that an undertaking be posted for an amount "not less than twice the value of the chattel stated in the plaintiff's affidavit, for the return of the chattel to any person to whom possession is awarded by the judgment, and for payment of any sum awarded by the judgment against the person giving the undertaking."

In the R&R, Judge Reyes references this requirement but notes that this condition was waived by the parties:

> The N.Y. C.P.L.R. also requires a plaintiff to present an undertaking to the court. § 7102(e). Section 19 of the ILSA, however, waives this condition: "In the event Lender seeks to take possession of any or all of the Collateral by judicial process, Dealer hereby irrevocably waives, to the fullest extent permitted by applicable law, any bonds and any surety or security relating thereto that may be required by applicable law as an incident to such possession . . . ."

(R&R at 4 n.5.) Defendants object, arguing that the language of the N.Y. C.P.L.R is "not discretionary, nor does it provide for a waiver." (Def. Obj. at 5.) Defendants do not cite any legal support for their position, however, and at least one court in this District has recently held that the undertaking requirement is, in fact, waivable. See Merrill Lynch Commercial Fin. Corp. v. Am. Standard Testing & Consulting Labs., Inc., No. CV-09-4721 (SJF) (ARL), 2010 WL 114280, at *7 (E.D.N.Y. Jan. 12, 2010) ("I . . . reject defendants' contention that the undertaking requirement

14

in [N.Y. C.P.L.R.] Section 7102 is not waivable."). The undertaking requirement has been waived and therefore does not stand as an obstacle to the Court's issuing an order of seizure in favor of HCA.

* * *

In sum, HCA has established a prima facie case for entitlement to an order of seizure, and Defendants have failed to present any bona fide defenses to same.

## CONCLUSION

For the reasons stated above, the Court accepts Judge Reyes's recommendation to grant HCA's motion for an order of seizure. The TRO issued by Judge Matsumoto—and which Judge Reyes extended on October 23, 2019 for 45 days, with the consent of the parties—will expire on December 9, 2019. HCA is directed to provide the Court with a proposed Order of Seizure reflecting the Collateral in Exhibit G to their Complaint that it seeks to recover.

SO ORDERED.

Dated: November 27, 2019
      Brooklyn, New York

                                 s/Carol Bagley Amon

                                 Carol Bagley Amon
                                 United States District Judge